[L. A. No. 13513. In Bank.—March 24, 1933.]

WILLIAM WILCOX et al., Appellants, v. CITY OF TORRANCE (a Municipal Corporation) et al., Respondents.

Gibson, Dunn & Crutcher for Appellants.

Perry G. Briney, O'Melveny, Tuller & Myers, James L. Beebe and Pierce Works for Respondents.

PRESTON, J.—The governmental authority of the City of Torrance, a municipal corporation of the sixth class, moved in strict conformity with the provisions of the Improvement Act of 1927 (Stats. 1927, chap. 731, p. 1351 et seq.) to create an improvement district thereunder, to be known as Municipal Improvement District No. 1 of the City of Torrance, comprising about one-fifth of the area but including from two-thirds to three-fourths of the value of the taxable real property of said city.

The object of the formation of the district was to authorize a bond issue of $400,000 to construct or otherwise acquire a public utility, to wit: a water system for said area, and to do so notwithstanding the existence of a privately owned and operated utility of that character in said city. A vote was taken and the authority was granted by the requisite majority. No protest by property owners was made and no claim is made now that any technical step required by the act was omitted.

Appellants, property owners then and now in said district, have sued to have all the said proceedings declared void and particularly to restrain the city and its various officers from taking further steps to issue and sell said bonds or to proceed to acquire said improvement. They assert that said act, as applied to a revenue producing utility, is violative of constitutional guaranties of both the federal and state authorities. (Fourteenth Amendment to the Constitution of the United States; sections 14 and 21 of article I of the Constitution of the state of California.) A demurrer to the complaint was sustained. Plaintiffs declined to amend; judgment passed for defendants and this appeal resulted.

The act provides that the governing body of a municipal corporation may, on the petition of a certain percentage of

the electors of the proposed improvement district, set in motion machinery, the result of which may be the creation of a district comprising all or part of such municipality and the voting of a bond issue to construct or otherwise acquire a public utility to serve the inhabitants of such district. The municipality may accept a mandate to administer the funds arising from the sale of such obligations so as to acquire and cause to be vested in itself the title to such utility. The municipality may also itself undertake the task of operating and maintaining it for the purpose for which it was formed. It may also at stated intervals, impose an *ad valorem* tax on the real property in the district sufficient to pay the accruing interest on said bond indebtedness, together with the necessary contribution to the sinking fund for gradual discharge of same.

Appellants insist that such an exercise of authority, when applied to a water system, is the setting up by a municipality of a revenue producing public utility therein to be operated at a profit for the benefit of the whole city, using to obtain it a tax on the real property of only a portion thereof. Appellants themselves narrow the issues and state their position in the following language:

"For the purposes of decision herein, we are willing to concede that the proceedings in question would not be invalid on the ground urged by appellants if either (a) the entire City of Torrance had been included in the assessment district, on the same basis; or (b) the water system proposed to be constructed were one to be owned by and operated for the assessment district exclusively. In other words, succinctly stated, the appellants' sole objection is that the proceedings are avowedly directed and intended to acquire a water system which—while located wholly within the assessment district—is to be vested in the absolute ownership of the city as such, with unrestrained power, and admitted intention, to devote its revenues, in excess of bare operating expenses, to the use and benefit of the entire city, and not exclusively or especially of the assessment district; and yet the land owners of that limited district are burdened with the entire cost of constructing the system, including all cost of financing the same through the issuance of an interest-bearing bonded indebtedness payable over a period of many years."

If the baneful factors claimed by appellants were really present in the act, appellants' argument would have force, but we are not able to discern their existence. The utility is for the sole benefit of the district and no other inhabitants of the city or others may be served to the detriment of the users of the district. No authority is conferred by the act to serve any outside area. No authority can be found in the act authorizing the utility to be operated at a profit nor is there any provision allowing a profit, if such should accrue, to go to the general fund of the city. We look in vain to the act for provisions allowing or disposing of profits from any such utility. Naturally, with the duty to maintain and operate it, there will be at times a surplus in the district fund. This will come from necessity and not from design to acquire a profit. We have no doubt that if an undue profit is about to result, the district may either see that it does not come to pass or that it redounds to the benefit of the district alone.

But at any rate, the city generally may not make a profit on capital furnished by a part of the owners of real property therein. The motives or intentions of the city authorities to operate the utility for gain to the city, as alleged, do not constitute ground for relief where the statute does not permit a realization of such purpose. The law allows the formation of such districts because it can be seen that special benefits will result to inhabitants thereof not shared by the remainder of the city or the public generally.

Such questions as the existence of these special benefits, the area so benefited and the superiority of this utility over a private one in the same territory are matters that are legislative in character and in their ordinary manifestations are not in the control of the courts. Appellants' failure to protest on any of these grounds forbids our consideration of any of them.

The judgment is affirmed.

Shenk, J., Seawell, J., Curtis, J., Langdon, J., Thompson, J., and Waste, C. J., concurred.